[Cite as *State v. Armengau*, 2020-Ohio-3552.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                      :

                                                          No. 18AP-300

v.                                                     :       (C.P.C. No. 13CR-2217)

Javier Armengau,                                       :       (REGULAR CALENDAR)

      Defendant-Appellant.                     :

---

D E C I S I O N

Rendered on June 30, 2020

---

**On brief:** *Dave Yost*, Attorney General, and *Matthew J. Donahue*, for appellee. **Argued:** *Stephanie R. Anderson.*

**On brief:** *Blake Law Firm Co., LLC,* and *Dustin M. Blake*, for appellant. **Argued:** *Dustin M. Blake.*

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Javier Armengau, appeals an amended judgment entry of the Franklin County Court of Common Pleas entered into the record on March 28, 2018 following a resentencing held on March 27, 2018. This judgment entry issued pursuant to a remand from this Court for resentencing on Counts 10, 14, 15, and 17 and for imposing an appropriate tier sex-offender classification. Because Armengau already served the 30-month sentence imposed for the sexual battery incident underlying Count 15, the trial court erred in resentencing when it denied credit for time already served in connection with that conduct and, by its statements, appeared to rely on the sentencing package doctrine in preserving the prior term of imprisonment and without reference to the sentencing requirements of Title 29 of the Ohio Revised Code, when it required Armengau to serve a 48-month consecutive sentence for Count 15. We therefore sustain, in part, Armengau's first assignment of error and remand to the trial court for resentencing on Count 15.

Because Counts 15 and 18 were based on separate incidents, the trial court did not err by failing to merge them. Thus, we overrule Armengau's second assignment of error. Armengau's remaining arguments under his third assignment of error are foreclosed as res judicata and law of the case.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} We have previously recounted the facts and procedural history of this case in detail. *State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452, ¶ 2-52. Suffice it to say, Armengau was indicted for 18 counts as a result of allegations from women whom he encountered in the course of his practice as a criminal defense attorney. *Id.* at ¶ 3. He was acquitted of 9 counts but was ultimately convicted, following a lengthy jury trial, of one count of public indecency (Count 2), 2 counts of gross sexual imposition (Counts 3 and 8), one count of rape (Count 10), one count of kidnapping (Count 14), and 4 counts of sexual battery (Counts 15 through 18). (July 7, 2014 Verdict Forms.) Counts 2 and 3 (public indecency and gross sexual imposition) concerned one victim, C.C.; Count 8 (the other gross sexual imposition charge) concerned another victim, K.R.; and the remaining Counts 10, 14, and 15 through 18 concerned a third victim, L.M. (May 20, 2013 Indictment.)

{¶ 3} In sentencing Armengau, the trial court merged Counts 10 and 15, reasoning that the sexual battery underlying Count 15 was not separate from the rape underlying Count 10. (Aug. 28, 2014 Jgmt. Entry at 2.) It then sentenced Armengau to 15 months on each of the gross sexual imposition counts, 9 years for rape, 4 years for kidnapping, and 30 months on each of the three remaining sexual battery counts (16 through 18). *Id.* at 3. All counts were to be served concurrently with the others except for the kidnapping (Count 14), which the trial court ordered Armengau to serve consecutively to the rape (Count 10). *Id.* As a result, the court sentenced Armengau to a total of 13 years in prison. *Id.* The trial court also found Armengau to be a Tier III sex offender and notified him accordingly. *Id.* at 1-2. In a separate entry, the trial court sentenced Armengau to 30 days that were time served on the public indecency count. (Aug. 28, 2014 Misdemeanor Entry.)

{¶ 4} In Armengau's direct appeal, he raised and we addressed nine assignments of error:

> [I.] The trial court erred in permitting the amendment of the indictment and bill of particulars, which even after amendment remained duplicative and lacked the requisite specificity. That error, along with the State's own confusion regarding the

relevant conduct underlying these counts, resulted in violations to Mr. Amengau's [sic] rights to due process of law, a fair trial, jury unanimity, and the double jeopardy protections to which he was entitled. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Article I, Sections 10 and 16, Ohio Constitution; Crim.R. 31(A).

[II.] Mr. Armengau's rights to due process and a fair trial were violated when the trial court allowed the State to present irrelevant, cumulative, overly prejudicial evidence about prior bad acts through additional non-victim witnesses, whose testimony also violated the Ohio Rape Shield Statute, as well as testimony of hundreds of unindicted offenses.

[III.] The trial court erred when it imposed separate sentences for offenses that arose from the same conduct, were not committed separately or with a separate animus, had a similar import, and should have been merged for sentencing purposes under R.C. 2941.25.

[IV.] The prosecutors' misconduct denied Mr. Armengau a fair trial and due process of law, in violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, Article I, Sections 10 and 16, of the Ohio Constitution, and R.C. 2901.05.

[V.] Javier Armengau was deprived of his constitutional right to the effective assistance of counsel. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Article I, Section 10 and 16, Ohio Constitution.

[VI.] The trial court erred in denying Javier Armengau's Crim.R. 29 motion for acquittal, and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him of counts 8, 10, 14, 15, 17, and 18.

[VII.] The trial court erred in denying Javier Armengau's Crim.R. 29 motion for acquittal, and violated his rights to due process and a fair trial when, in the absence of sufficient evidence, it convicted him of counts 3 and 8.

[VIII.] The trial court violated Javier Armengau's constitutional right to be free from retroactive laws.

[IX.] The trial court violated Javier Armengau's right to due process and a fair trial through cumulative error.

*Armengau*, 2017-Ohio-4452, at ¶ 53, in passim.

{¶ 5} In that decision, a divided panel of this Court recognized a number of problems with Armengau's trial, including a mid-trial amendment to the indictment to change the location and times of the offenses, many instances in which evidence was introduced regarding unindicted immoral conduct, and misconduct by the prosecution in employing a closing that capitalized on the improperly admitted "other bad acts" evidence to essentially argue that there were so many accusers that Armengau must have done something. *Id.* at ¶ 54-61, 68-77, 81-94. Ultimately, however, a majority of the panel concluded that the jury had followed the trial court's limiting instructions and the mixed verdict (nearly one-half of the charges were acquittals) showed that the jury had been able to appropriately weigh the evidence as to each offense. *Id.* at ¶ 72, 76, 85-86, 92, 94, *but cf. id.* at ¶ 141-43 (Tyack, J., dissenting) (commenting that "a great deal of prejudicial evidence was placed before the jury and then the prosecution was permitted to argue that even though some of the evidence was utterly incredible, there was so much of it that Armengau must be guilty of something").

{¶ 6} The panel in Armengau's first appeal found that the trial court had erred by failing to merge Counts 10 and 14 (rape and kidnapping) and by merging the wrong sexual battery count (Count 15) with the rape rather than the correct sexual battery count (Count 17). *Id.* at ¶ 122-30. It also found that the trial court had erred in retroactively applying to Armengau the Adam Walsh Act changes to Ohio's sex offender laws. *Id.* at ¶ 131-34. This Court ordered that Armengau's case be "remanded for resentencing as to Counts 10, 14, 15, and 17. The court will vacate appellant's Tier III sex offender classification and apply the sex offender classification under the law in effect at the time of the offenses for which he was convicted." *Id.* at ¶ 136.

{¶ 7} On remand, the parties engaged in considerable motions practice on the merits of the case, including sentencing memoranda, a motion for a new trial, and a motion to dismiss the counts to be resentenced based on the argument that Armengau was to be resentenced on unindicted and insufficiently supported counts. (Sept. 19, 2017 Second Mot. for New Trial; Jan. 16, 2018 Mot. to Dismiss; Mar. 26, 2018 Armengau's Sentencing Memo.) Regarding sentencing, the State noted that this Court remanded only for a new sex offender classification and for limited resentencing as to Counts 10, 14, 15, and 17. (Mar. 26, 2018 State's Sentencing Memo. at 1.) The State also argued that "the sentencing package

doctrine" permitted the trial court " 'to resentence [Armengau] on all counts to *effectuate its previous intent.*' " (Emphasis added by State's Memo.) (Mar. 26, 2018 State's Sentencing Memo. at 3, quoting *State v. Jackson*, 10th Dist. No. 03AP-698, 2004-Ohio-1005.)[1]

{¶ 8} At the resentencing hearing, the trial court declined a defense motion to engage in factfinding in regard to what specific incident formed the basis for each count. (Mar. 27, 2018 Resentencing Tr. at 15-16, 29-30, filed June 4, 2018.) In addition, despite defense arguments that sexual battery counts in Counts 15 and 18 should merge because the incidents were indistinguishable, the trial court indicated that they were separate incidents and declined to merge them. (Mar. 27, 2018 Resentencing Tr. at 33-43.) As required by this Court, however, the trial court merged the kidnapping count (Count 14) with the rape count (Count 10), and exchanged the sexual battery counts, merging Count 17 with Count 10 rather than Count 15. (Mar. 28, 2018 Am. Jgmt. Entry at 4-5.) The trial court recognized that all previously imposed sentences would "remain in full force and [e]ffect" but stated that it would like to impose a total of 13 years in order to be "consistent" with the original trial judge's sentencing. *Id.* at 5; Mar. 27, 2018 Resentencing Tr. at 30, 33. It therefore sentenced Armengau to 48 months on the sexual battery in Count 15 and ordered Armengau to serve that sentence consecutively to the 9 years imposed in Count 10. (Mar. 28, 2018 Am. Jgmt. Entry at 4-5; Mar. 27, 2018 Resentencing Tr. at 30-33.)

{¶ 9} Armengau now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 10} Armengau raises three assignments of error for review:

> [1.] APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS, NOTICE OF THE SPECIFIC CHARGE AND HIS RIGHT TO FUNDAMENTAL FAIRNESS AS GUARANTEED BY THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION WHEN HE WAS RESENTENCED ON COUNTS 10, 14, 15, 16, 17, AND 18 AND WHEN HE WAS

---

[1] The Supreme Court of Ohio explicitly rejected the sentencing package doctrine two years after *Jackson* was decided, thereby implicating its reliability for future use by the courts of this state. *Jackson; State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, paragraphs one and two of the syllabus ("A sentence is the sanction or combination of sanctions imposed for each separate, individual offense. [] The sentencing-package doctrine has no applicability to Ohio sentencing laws: the sentencing court may not employ the doctrine when sentencing a defendant and appellate courts may not utilize the doctrine when reviewing a sentence or sentences."); *see also State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 16.

RESENTENCED ON COUNT 15 TO A CONSECUTIVE TERM OF IMPRISONMENT TO COUNT 10.

[2.] THE TRIAL COURT'S FAILURE TO MERGE COUNTS 15 AND 18 FOR SENTENCING VIOLATED R.C. 2941.25 AND/OR R.C. 2929.14 AND APPELLANT'S RIGHTS UNDER THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

[3.] APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS, DOUBLE JEOPARDY, NOTICE OF THE SPECIFIC CHARGE AND HIS RIGHT TO FUNDAMENTAL FAIRNESS AS GUARANTEED BY THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION WHEN HE WAS TRIED, SENTENCED AND RESENTENCED FOR UNCHARGED AND UNNOTICED CONDUCT AND CONVICTED UPON INSUFFICIENT EVIDENCE THAT RESULTED FROM DEFECTIVE JURY INSTRUCTIONS, PROSECUTORIAL MISCONDUCT AND IMPROPER INTRODUCTION OF OTHER-ACT EVIDENCE.

(Citations omitted.)

## III.  DISCUSSION

### A.  First Assignment of Error – Whether the Trial Court Erred in Imposing Sentence on Count 15 and in Ordering that Sentence to be Served Consecutively to Count 10

{¶ 11}  Armengau argues that the trial court erred at his original sentencing in 2014 by confusing the count numbers (rather than the underlying conduct) when it merged Count 15 rather than 17 and sentenced him to serve 30 months on Count 17.  (Armengau's Brief at 4-12.)  Because the error was not in how the trial court chose to substantively punish his conduct, but rather an accidental "flip" of numerical designation, and because Armengau completed the 30-month sentence associated with the conduct (albeit under the wrong count number), he argues that it is not now appropriate for the trial court to have imposed a new sentence for the same conduct.  *Id.* at 8.  We partially agree.

{¶ 12}  The Fifth Amendment forbids punishing an offender twice for the same offense and thus requires that credit for all time served in relation to an offense must be awarded when an offender is resentenced for that same offense.  *North Carolina v. Pearce*,

395 U.S. 711, 717-19 (1969) (distinguished and limited on other grounds by *Alabama v. Smith*, 490 U.S. 794, 802-03 (1989)[2]). As the United States Supreme Court states it, "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense." (Footnote omitted.) *Pearce* at 718-19; *State v. Christian*, ___ Ohio St.3d. ___, 2020-Ohio-828, ¶ 24.

{¶ 13} Our prior decision on direct appeal made clear that Count 15 was based on facts related to a sexual incident in Armengau's white truck, whereas Count 17 was based on the coerced fellatio that formed the basis for the rape charge in Count 10 (as well as the kidnapping charge in Count 14). *Armengau*, 2017-Ohio-4452, at ¶ 128-29. The trial court erred, however, when it switched the count numbers (15 and 17) and merged Count 15 (which had nothing to do with Count 10) rather than merging Count 17 (which arose from the same conduct as Count 10). *Id.* at ¶ 129. In other words, while Armengau was not technically sentenced on Count 15 (since it had improperly merged with Count 10), he was sentenced for the conduct underlying Count 15 when he was sentenced for what the 2014 sentencing court mistakenly referred to as Count 17.

{¶ 14} At the time of his resentencing on March 27, 2018, Armengau had served 1365[3] days in prison (more than 45 months). That is well in excess of the 30 concurrent months to which he was sentenced for all the incidents of sexual battery, including the conduct in the white truck. (Tr. at 4055-59.)[4] While the counts charged are an important component of criminal sentencing, one of the fundamental purposes of sentencing is to serve as society's response to the "conduct" of offenders. *See, e.g.,* R.C. 2929.11(A) through(B); R.C. 2929.12(A) through (C). The provisions of Chapter 2929 of the Ohio Revised Code, "PENALTIES AND SENTENCING," refer sentencing courts to consideration

[2] Contrary to some overbroad statements in other jurisdictions, *Smith* did not overrule *Pearce* itself; it only overruled *Simpson v. Rice*, which was decided with *Pearce*. *Smith*, 490 U.S. at 802-03; c*ompare State v. Carnahan*, 3d Dist. No. 4-15-18, 2016-Ohio-3213, ¶ 11, fn. 1; *State v. Donahue*, 6th Dist. No. WD-05-025, 2006-Ohio-1117, ¶ 8 (stating that *Pearce* was overruled by *Smith*) *with State v. Price*, 8th Dist. No. 103023, 2016-Ohio-591, ¶ 20 (recognizing that *Pearce* was merely limited by *Smith*); *see also State v. Hall*, 10th Dist. No. 09AP-302, 2009-Ohio-5712, ¶ 14-16 (recognizing *Pearce*'s continuing vitality despite limitations imposed in subsequent cases). Specifically, *Smith* limited the *Pearce* presumption of vindictiveness, noting that it would not apply in cases "where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea," and stating, "we overrule *Simpson v. Rice, supra*, to that extent." *Smith* at 803. The circumstances of *Rice* are not present in this case and thus we apply *Pearce*.
[3] August 26, 2014 through March 27, 2018 plus 56 days of jail credit.
[4] Trial transcript filed on July 9, 2015 in 19 consecutively paginated volumes.

of the offender's "conduct" no fewer than 25 times. R.C. 2929.01 et seq. While we recognize that Armengau was technically not sentenced on Count 15 in his original sentencing, to permit Armengau to be resentenced to a new term of imprisonment for the same underlying conduct without credit for the time already served simply because of an error in designating the appropriate count number, would be, at a minimum, to elevate form far above substance.

{¶ 15} The Constitution permitted Armengau to be punished once for the conduct that underlay Count 15 (but which the trial court originally mistakenly referred to as Count 17). *Pearce*, 395 U.S. at 717-19; *Holdcroft*, 2013-Ohio-5014, at ¶ 14, 18, paragraph three of the syllabus. And he was. He was sentenced to 30 concurrent months, which he more than served in full. On resentencing, the 30 months should have been credited against whatever sentence was reimposed for the count relating to the sexual battery in the white truck (by whatever number it is called). *See accord Christian*, 2020-Ohio-828, at ¶ 24.

{¶ 16} We note that, in *Christian*, the original sentence had been for Counts 2 and 3 of the indictment in that case to be served concurrently to the sentence for Count 5. When resentencing on remand, the trial court ordered Christian to serve the sentence on Count 2 consecutive to Count 5. The Supreme Court found that Christian was entitled to have the time she served simultaneously on both counts credited toward both of her new sentences on those counts.

{¶ 17} Armengau argues that, on remand, the trial court should have been entirely forbidden from sentencing him on Count 15 because he already served the 30 months that were imposed for the conduct. (Armengau's Brief at 4-12.) However, the expectation of finality in a sentence that prevents resentencing for the same offense does not mature until the direct appeal is concluded or the time to appeal has expired. *Christian* at ¶ 16-18; *State v. Roberts*, 119 Ohio St.3d 294, 2008-Ohio-3835, ¶ 16. Thus, only after direct appeal is concluded or the time to appeal has expired does it become true that "[a] trial court does not have the authority to resentence a defendant * * * after the defendant has already served the prison term for that offense." *Holdcroft* at ¶ 14, 18, paragraph three of the syllabus; *see also Christian* at ¶ 15; *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, ¶ 24-26. Armengau directly appealed his case in 2014 and obtained a partial reversal and remand for resentencing on Counts 10, 14, 15, and 17. *See Armengau*, 2017-Ohio-4452. On remand,

the trial court resentenced on those counts and this appeal is a direct appeal from that proceeding. In other words, Armengau is still (concerning Counts 10, 14, 15, and 17) pursuing a direct appeal and those counts are still not final. Thus, on resentencing, the trial court was entitled to resentence Armengau on those counts.

{¶ 18} In addition to not crediting Armengau with time already served, the trial court sentenced Armengau on Count 15 to a consecutive sentence of 48 months because of an expressed desire for the entire sentencing package to be "consistent" with the total term of imprisonment imposed by the original sentencing judge. (Mar. 27, 2018 Resentencing Tr. at 30, 33, 61.) Having reviewed the sentencing transcript, we note that the trial court followed the State's recommendation and adopted "the sentencing package doctrine." (Mar. 26, 2018 State's Sentencing Memo. at 3; Mar. 27, 2018 Resentencing Tr. at 8-9.) The " 'sentencing package' doctrine, [is] a federal doctrine that requires the court to consider the sanctions imposed on multiple offenses as the components of a single, comprehensive sentencing plan." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 5. But, contrary to the State's assertions, "[t]he sentencing-package doctrine has no applicability to Ohio sentencing laws: the sentencing court may not employ the doctrine when sentencing a defendant and appellate courts may not utilize the doctrine when reviewing a sentence or sentences." *Id.* at paragraphs one and two of the syllabus; *see also State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, ¶ 16.

{¶ 19} Not only has the sentencing package doctrine been repudiated, but the trial court's expressed rationale, to conform the sentence to the term of imprisonment imposed by the prior judge in the case, is not an appropriate consideration for imposing sentence in Ohio pursuant to Title 29 of the Ohio Revised Code. *See, e.g.*, R.C. 2929.11 through 2929.14. Moreover, while the trial court paraphrased the statutory language of R.C. 2929.14(C)(4) when imposing consecutive sentences, it did not mention any fact about the case that convinced it that consecutive service was necessary for the sexual battery conduct when it had not been before. (Mar. 27, 2018 Resentencing Tr. at 32.) The trial court declined to even designate the factual basis for the charges underlying Armengau's convictions. *Id.* at 29-30. Essentially, the record indicates that the trial judge's sentence on Count 15 was designed to conform to the total term the prior judge in the case had imposed before we

reversed in a subsequent appeal involving other issues. *Armengau*, 2017-Ohio-4452. (Mar. 27, 2018 Resentencing Tr. at 30, 33, 61.)  That was error.

{¶ 20}  Armengau's first assignment of error is sustained in part.  When resentencing on Count 15, the trial court should have credited Armengau for time already served in connection with the conduct underlying the offense and should not have used the sentencing package doctrine to effectuate the prior sentencing judge's intent in lieu of the Title 29 sentencing provisions including giving a factual basis for the new consecutive sentence pursuant to *Christian*.

## B. Second Assignment of Error – Whether the Trial Court Erred by Failing to Merge Counts 15 and 18

{¶ 21}  The Ohio statute on allied offenses provides as follows:

> (A) Where the same conduct by [the] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶ 22}  The Supreme Court of Ohio has explained how to apply this statute:

> Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, paragraph three of the syllabus.  Whether offenses were "committed separately" is self-explanatory, but the Supreme Court has defined "dissimilar import" as follows:

> Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Ruff* at paragraph two of the syllabus. The Court has also defined "animus" as "purpose, intent, or motive." *Newark v. Vazirani*, 48 Ohio St.3d 81, 84 (1990)[5], quoting *State v. Blankenship*, 38 Ohio St.3d 116, 119 (1988) (Whiteside, J., concurring); *see also Black's Law Dictionary* 107 (10th Ed.2014) (defining "animus" in relevant part as "[i]ntention"). The determination of whether or not offenses are allied offenses of similar import is reviewed de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 26-28.

{¶ 23} According to the amended bill of particulars and the trial court's reasoning during the resentencing hearing, Counts 15 and 18 concerned two different incidents of coercive intercourse in Armengau's white truck. (June 22, 2014 Am. Bill of Particulars at 3-4; Mar. 27, 2018 Resentencing at 33-43.) Our prior decision also recognized that L.M. testified to two instances of coercive intercourse in Armengau's white truck six months apart in 2000 or 2001. *Armengau*, 2017-Ohio-4452, at ¶ 34. In short, the trial court's decision not to merge Count 15 with 18 is supported by facts in the record showing that the offenses were "committed separately." *Ruff* at paragraph three of the syllabus.

{¶ 24} We overrule Armengau's second assignment of error.

## C. Third Assignment of Error – Res Judicata and Law of the Case

{¶ 25} In his third assignment of error, it appears Armengau seeks to relitigate (through his resentencing appeal) the merits of the underlying convictions themselves. (Armengau's Brief at 26-52.) He argues that venue was not proved as to each charge as alleged in the indictment, that the indictments were improperly amended, effectively denying him the right to presentment, and that the illegal introduction of other act evidence, erroneous jury instructions, and prosecutorial misconduct deprived him of a fair trial. *Id.* These issues could have been (and, for the most part, were) previously reviewed and resolved in Armengau's original direct appeal. *Armengau*, 2017-Ohio-4452, at ¶ 53, in passim; *see also State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, ¶ 92; *State v. Breeze*, 10th Dist. No. 15AP-1027, 2016-Ohio-1457, ¶ 7-9. While this Court recognized several serious problems with Armengau's trial, a majority of the panel (over a strongly worded dissent) ultimately concluded that the court's instructions and the jury's mixed verdict

---

[5] Note, *Vazirani* was overruled on other grounds by *State v. Rance*, 85 Ohio St.3d 632, 637 (1999) which has, itself, been overruled by a line of cases culminating in *Ruff*. *See State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314; *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699; *Ruff*, 2015-Ohio-995. Despite the many revisions of allied offenses law, there is no indication that the Supreme Court has altered the definition of "animus."

showed that the jury process had been sound and that the trial, as a whole, had not been unfair. *Armengau*, 2017-Ohio-4452, at ¶ 54-61, 68-77, 81-94; *see also id.* at ¶ 141-43 (Tyack, J., dissenting). Those findings now bind this Court. Even the fact that these arguments are foreclosed as law of the case and res judicata is, itself, res judicata. *See State v. Armengau*, 10th Dist. No. 18AP-276, 2019-Ohio-1010, ¶ 18, in passim (holding that all of these issues have been previously litigated to resolution and noting that Armengau was again raising the same issues in this case, 18AP-300).

{¶ 26} Armengau's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 27} Counts 15 and 18 concerned separate sexual incidents involving Armengau's white truck and thus the trial court did not err in refusing to merge those counts. The arguments raised in Armengau's third assignment of error are not substantively considered because their resolutions are res judicata and are now the law of the case. Accordingly, we overrule Armengau's second and third assignments of error. However, because the trial court should have credited Armengau for time already served in connection with the conduct underlying Count 15 and should not have used the sentencing package doctrine in lieu of the statutory sentencing provisions of Title 29 of the Revised Code, we sustain in part and overrule in part Armengau's first assignment of error. We remand the matter to the Franklin County Court of Common Pleas for resentencing on Count 15. In all other respects, we affirm.

*Judgment affirmed in part, reversed in part, and remanded for resentencing.*

BROWN, J., concurs.
NELSON, J., concurs in part and dissents in part.

NELSON, J., concurring in part and dissenting in part.

{¶ 28} I agree with the majority that Mr. Armengau's second and third assignments of error are not well taken. And I agree, too, that the trial court was authorized—indeed, required—to sentence Mr. Armengau on Count 15 (for the first time) pursuant to our earlier remand. Contrary to Mr. Armengau's arguments, the trial court did have jurisdiction to sentence on that count, and was authorized by law to impose a consecutive, four-year sentence for that sexual battery. I disagree, however, with what I take to be the majority's suggestion that Mr. Armengau already has served time specifically attributable to that

newly sentenced offense.  Rather, I think that the 30 months served on Count 17, which was to have been served concurrently with Count 10 in the first instance, should apply even now against that nine-year sentence on Count 10 (into which Count 17 has merged). Additionally, I note that the trial court *did* make the factual findings required in order to have Count 15 run consecutively with Count 10, and I read the judge's references to the earlier sentence as being by way of explaining that she was not seeking vindictively to see the original aggregate sentence "increased."  *See* March 27, 2018 Sentencing Transcript at 33 ("It could have been increased").    Because I would not "partially" sustain Mr. Armengau's first assignment of error, or rewrite it, I respectfully dissent to that limited degree.  *Compare* ¶ 11 above.

{¶ 29}  As a preliminary matter, simply lest there be any doubt from the majority's recitation of facts and procedural history, I note that an earlier panel of this court did uphold the jury determinations of guilt that relate to the sentencing matters now at issue here.  *See State v. Armengau*, 10th Dist. No. 14AP-679, 2017-Ohio-4452 ("*Armengau II,*" with this appeal being "*Armengau V*"), *discretionary appeal not allowed*, 151 Ohio St.3d 1511, 2018-Ohio-365.   And those findings of guilt reflect the victimization of multiple women who turned to lawyer Armengau in times of desperate need:  a mother who had hired Mr. Armengau to represent her son in a criminal case, *id.* at ¶ 6; a young woman who herself was a criminal defendant and who testified that she had spurned his advances, *id.* at ¶ 28; and "an immigrant from Venezuela with limited English" and a young daughter, who sought immigration and divorce advice, *id.* at ¶ 31.  It is this last victim, "L.M.," who was the object of the rape/kidnapping and sexual battery offenses for which *Armengau II* ordered resentencing (Counts 10, 14, 15, and 17): she testified to various incidents over a period of years, "always under the implied threat that if [lawyer Armengau] dropped her case she would lose her immigration status and custody of her daughter," *see id.* at ¶ 34. The nature of these crimes does not and should not alter the legal principles involved here, but it can appropriately inform certain aspects of sentencing consistent with the law; further, there may be a more felicitous way to refer to these victims than "women whom [Mr. Armengau] encountered in the course of his practice as a criminal defense attorney," *see* ¶ 2 above.

{¶ 30} In any event, I do not believe it correct to say that Mr. Armengau had "already served the 30-month sentence imposed for the sexual battery incident underlying Count 15," *compare* ¶ 1 above, when in accordance with *Armengau II* he was sentenced on that count for the first time in the entry now under review. In my view, Mr. Armengau was not sentenced on Count 15 at his 2014 hearing; that sexual battery count incorrectly was merged into the Count 10 rape conviction regarding a different incident. *Armengau II* recognized that the merged Counts 10, 14, and 17 related to "oral sex in appellant's Marion office," *id.* at ¶ 128, while Count 15 related to one of two incidents, six months apart, in which Mr. Armengau "drove L.M. in a white truck * * * to a rural field where he forced her to have vaginal sex," *see id.* at ¶ 34, 129; *see also, e.g.*, June 22, 2014 [Second] Amended Bill of Particulars at 4 (alleging lawyer's threats to L.M., in this context, that she would lose her daughter and be deported if she did not succumb). As the majority notes, the other "different incident[] of coercive intercourse in Armengau's white truck" was reflected by Count 18, as to which we did not order resentencing. *See* ¶ 23 above. Our remand for resentencing on Count 15, therefore, imposed no limitation beyond the constraints of statute: as in *State v. Busby,* 10th Dist. No. 09AP-1119, 2010-Ohio-4516, ¶ 6, "[t]hat decision did not limit the trial court's sentencing discretion or prohibit the trial court, on remand, from imposing consecutive sentences on appellant."

{¶ 31} The majority acknowledges that "[Mr.] Armengau was technically not sentenced on Count 15" until the resentencing. ¶ 14 above. It argues, however, that while serving part of his rape sentence, Mr. Armengau did serve the concurrently and improperly sentenced 30-months on Count 17 (a different sexual battery, tied into "the same conduct as Count 10," *id.* at ¶ 13), and that the trial court in 2014 had intended that sanction to be for "the conduct underlying Count 15," *id.;* therefore, the majority says that we must treat the time served on Count 17 as having been served on Count 15 lest we "elevate form far above substance," *id.* at ¶ 14, by allowing Mr. Armengau to be punished twice for the " 'same offense,' " *id.* at ¶ 12 (quoting *Pearce*). (The majority does not speculate, nor would it matter, how the original trial judge might have sentenced on Count 15 had he (1) properly identified its nature at sentencing, and (2) properly understood that the kidnapping and rape counts needed to merge rather than being run concurrently.)

{¶ 32} Neither the majority nor Mr. Armengau offers any direct precedent that substitutes underlying "conduct" for "offense" in this context, or that otherwise reads sentencing principles to foreclose resentencing on a count not previously sentenced. I have not found any either. Here, he is not serving any additional time for "a new conviction on the same [Count 17] offense," *see Christian* at ¶ 24. It seems to me that if hypothetically there had been only two sentenced counts, Count 10 and Count 17, with time on each to be served concurrently (as originally was the case), and after the (shorter) Count 17 time had been served we ruled that the count was for an allied offense and needed to be merged into Count 10 (with its preexisting longer sentence), the time on Count 10 would not be reduced by double-counting the earlier time from Count 17. There wouldn't *be* a new sentence on Count 10 against which to credit that time; the hypothetical defendant would just have the one sentence, against which all aggregate time served would run. I don't believe that the resentencing on Count 10 (to the same nine-year term) changes that assessment. I do not think that the *Christian* counting issue is implicated because the 30 months on old Count 17 always came off the time served on Count 10, into which it now has been merged, and because Mr. Armengau never served time on Count 15, on which he is newly sentenced. And while aggregate calculations might be different if, for example, Mr. Armengau had served any additional time on Count 14, as now merged along with Count 17 into Count 10, that's not what happened here.

{¶ 33} Our earlier remand instructed, among other things, that the trial court's resentence of Mr. Armengau was to include (non-merged) Count 15. And the trial court needed to impose a sentence on that count, and resentence on Count 10, before any determination could be made as to whether the sentence on that count and the sentence on Count 10 should run concurrently or consecutively. Ohio's detailed (and, yes, highly formalized) "felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time. * * * * [It] makes no provision for grouping offenses together and imposing a single, 'lump' sentence for multiple felonies. * * * * Only *after* the judge has imposed a separate prison term for each offense may the judge then consider in [his or her] discretion whether the offender should serve those terms concurrently or consecutively." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 8-9 (emphasis added).

{¶ 34} Mr. Armengau has argued in a different context (urging that the two separate "white truck" sexual battery Counts 15 and 18 should have merged) that, "the trial court after remand and in resentencing on Count 15 was sentencing on that count for the first time therefore opening up a new [merger] issue not previously litigated." Appellant's Reply Brief at 10. That point, it seems to me, holds true at least for the question of the length of the sentence on Count 15 and whether or not it could run consecutively with the term imposed for Count 10. *Compare State v. Shabazz*, 8th Dist. No. 104635, 2017-Ohio-2984, ¶ 11 ("because the felonious assault charge pertaining to [one of the victims] had previously been merged as an allied offense to the aggravated murder count, that count was being addressed for the first time at resentencing"). And the trial court's 48-month sentence on Count 15 was within the statutory range for such third-degree felonies and not inconsistent with the purposes and principles of sentencing.

{¶ 35} So this is not a case in which a defendant is being deprived of jail-time credit for additional time served in connection with an allied offense that should have merged. Under the trial court's judgment, Mr. Armengau was to be credited with every day he spent incarcerated; the earlier concurrent sentence on Count 17 did not add to the time on which he was sentenced for any other count, and the days he has served would count against the 13-year total of the various sentences.

{¶ 36} In sum, I do not find merit in the particular constitutional claims that are the basis for Mr. Armengau's first assignment of error. And I do not believe that we ought to rewrite his assignment.

{¶ 37} Further, I note that the trial court did on resentencing make the findings required to permit consecutive sentences. Assuredly, the sentence as to each count must be assessed on its own to ensure that it is legal and appropriate for the particular offense. The trial court resentenced Mr. Armengau with regard to the four counts that we specified, merging Counts 14 (kidnapping) and 17 (the related sexual battery) into Count 10 (rape) consistent with our instructions, and imposing a separate sentence on the separate Count 15 sexual battery, as it also was required by our remand to do. The trial court then also considered whether the sentences on Counts 10 and 15 should run concurrently or consecutively.

{¶ 38} Unlike sentencing determinations for individual counts, decisions as to whether sentences should run consecutively or concurrently are by definition and necessity made with reference to the different counts under consideration. "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also" makes at least one of three additional findings, including that "the harm caused by two or more of the multiple offenses * * * committed [as part of one or more courses of conduct] was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." R.C. 2929.14(C)(4). These concepts involving necessity, and disproportionality, and adequacy require the sentencing court to consider sums of years on various counts rather than simply to consider individual sentences in a vacuum. That is a calculus in which the initial sentencing court engaged (in deciding to run consecutively the rape and kidnapping counts that should have merged) and in which, with a different judge on the bench, it engaged on resentencing (in deciding, after correctly merging the counts as to which consecutive sentences previously had been imposed, to run prison time on the newly sentenced sexual battery count consecutive to prison time on the separate and factually very distinct rape count).

{¶ 39} The "consecutive sentence [was] necessary," the resentencing court said, "to protect the public from future crimes or to punish the offender. Consecutive sentences are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public. And the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. Given the nature of these offenses and the position that you [Mr. Armengau] were in when you committed them and the people whom they were committed against, this Court certainly finds that a consecutive sentence is appropriate in this case." March 27, 2018 Resentencing Transcript at 32.

{¶ 40} The majority decision does not challenge those findings as statutorily insufficient to support the consecutive sentences. It does say that "while the trial court paraphrased the statutory language of R.C. 2929.14(C)(4) when imposing consecutive sentences, it did not mention any fact about the case that convinced it that consecutive service was necessary for the sexual battery conduct when it had not been before." ¶ 19 above. But no additional factfinding was required by law in order to impose the consecutive sentences. *See, e.g., State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 27 ("no statute directs a sentencing court to give or state reasons supporting its decision to impose consecutive sentences" after it makes the findings set out in R.C. 2929.14(C)(4)). And the substance of the trial court's consecutive sentence findings have ample support in the record.

{¶ 41} I would overrule the three assignments of error and affirm the trial court's judgment in full. I therefore concur with the majority to the extent that it affirms that judgment, and respectfully dissent to the extent that it does not.

_____